UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PENINSULA COMMUNITY HEALTH
SERVICES,

                    Plaintiff,

        v.

OLYMPIC PENINSULA HEALTH
SERVICES PS, et al.,

                    Defendants.

CASE NO. C20-5999 BHS

ORDER GRANTING PLAINTIFF'S
RULE 56(D) REQUEST AND
DENYING WITHOUT PREJUDICE
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

        This matter comes before the Court on Defendants Olympic Peninsula Health

Services PS, Antif Mian M.D. and Jane Doe Mian, and Ann Failoni and John Doe

Failoni's (collectively "Olympic") motion for summary judgment. Dkt. 12. The Court has

considered the motion and the briefs filed in support of and in opposition to the motion

and the remainder of the file and hereby denies the motion without prejudice for the

reasons stated herein.

1

## I.   PROCEDURAL HISTORY AND FACTUAL BACKGROUND

2

**A.    Overview**

3

This case involves a trademark dispute between health services providers in

4

Western Washington. Defendant Olympic is a for-profit provider of treatment for opioid

5

use disorder and medication-assisted treatment for alcohol use disorder. Olympic has

6

clinics located in Port Angeles and Port Hadlock, and serves Clallam County, Jefferson

7

County, and the Olympic Peninsula. OPHS began using its trade name, OLYMPIC

8

PENINSULA HEALTH SERVICES, on January 1, 2018, and adopted the following

9

design mark shortly thereafter:

10

11

12



13

14

Plaintiff Peninsula Community Health Services is a nonprofit provider of medical,

15

dental, behavioral health, substance use treatment, and pharmacy services. Peninsula has

16

clinics in Bremerton, Belfair, Shelton, Kingston, Port Orchard, Poulsbo, and Silverdale,

17

as well as school-based and mobile clinics, and serves Kitsap County, Mason County,

18

and the Olympic Peninsula.[1] Peninsula began using its trade name, PENINSULA

19

20

21

_____

22

[1] Olympic notes that Peninsula formerly had locations on the Olympic Peninsula but no longer does. Dkt. 12 at 8.

ORDER - 2

1  COMMUNITY HEALTH SERVICES, on June 1, 1999, and adopted the following

2  design mark in February 2001:

3

4

5

6  **B.    Background**

7        Peninsula alleges that after Olympic registered its Tree Logo with the State of

8  Washington, several of Peninsula's patients and community partners "stated their

9  mistaken belief to Peninsula that Olympic's clinics were Peninsula's." Dkt. 1, ¶ 15.

10  Shortly thereafter, Peninsula wrote to Olympic to express concern that the similarity of

11  the names and logos would confuse the public. *Id.* ¶ 1. Olympic declined to change its

12  name, trademark, or logo. *Id.* Peninsula alleges that Atif Mian and Ann Failoni are

13  owners, agents, and officers of Olympic and are responsible for the trademark

14  infringement. *Id.* ¶¶ 2–5.

15        Peninsula brought this suit on October 8, 2020, claiming unfair competition and

16  false designation of origin in violation of 15 U.S.C. § 1125(a), trade name infringement,

17  infringement of Peninsula's registered trademark in violation of RCW 19.77, *et seq.*, and

18  violation of Washington's Consumer Protection/Unfair Business Practices Act, RCW

19  19.86, *et seq*. Dkt. 1. On March 8, 2021, Olympic moved for summary judgment, arguing

20  that Peninsula's mark is generic and that there is no likelihood of confusion. Dkt. 12.

21  Peninsula responded on April 26, 2021, arguing that its mark is protectable, that it has

22  evidence of confusion, and in the alternative seeking a continuance under Federal Rule of

Civil Procedure 56(d). Dkt. 17. Olympic replied on April 30, 2021, contending that there are no disputes of fact about the weakness of Peninsula's mark and the similarity of the marks and that Peninsula fails to show how the discovery it seeks would reveal additional evidence in support of its opposition. Dkt. 29.

## II.   DISCUSSION

Olympic moves for summary judgment on all of Peninsula's claims, arguing that it cannot maintain its claims as a matter of law because its mark is not protectable, and even if it is, there is no likelihood of confusion.

### A.   Summary Judgment Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing

1    versions of the truth. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 253 (1986); *T.W.*

2    *Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

3              The determination of the existence of a material fact is often a close question. The

4    Court must consider the substantive evidentiary burden that the nonmoving party must

5    meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477

6    U.S. at 254; *T.W. Elec. Serv., Inc*., 809 F.2d at 630. The Court must resolve any factual

7    issues of controversy in favor of the nonmoving party only when the facts specifically

8    attested by that party contradict facts specifically attested by the moving party. The

9    nonmoving party may not merely state that it will discredit the moving party's evidence

10   at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W.*

11   *Elec. Serv., Inc*., 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory,

12   nonspecific statements in affidavits are not sufficient, and missing facts will not be

13   presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

14   **B.    Trademark Infringement**

15             "The Lanham Act provides national protection of trademarks in order to secure the

16   owner of the mark the goodwill of his business and to protect the ability of consumers to

17   distinguish among competing producers." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*,

18   469 U.S. 189, 198 (1985). A Lanham Act claim requires proof that "(1) trademark is a

19   valid, protectable trademark; (2) [the plaintiff] owns the trademark; and (3) the opposing

20   party used the trademark or a similar trademark without consent in a manner likely to

21   cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or

22   approval of goods." *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1196 (9th Cir. 2009).

"Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002).

"There are five categories of trademarks: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful." *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc*., 419 F.3d 925, 927 (9th Cir. 2005) (citing *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.,* 408 F.3d 596, 602 (9th Cir. 2005)). The latter three categories are inherently distinctive and automatically entitled to protection because they naturally function to identify the particular source of a product. *Id*. (citing *KP Permanent Make-Up*, 419 F.3d at 927). "Descriptive marks 'define a particular characteristic of the product in a way that does not require any exercise of the imagination.'" *Id*. (quoting *Surfvivor Media, Inc. v. Survivor Productions,* 406 F.3d 625, 632 (9th Cir. 2005)). "A descriptive mark can receive trademark protection if it has acquired distinctiveness by establishing "secondary meaning" in the marketplace." *Id*. (citing *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.,* 198 F.3d 1143, 1147 (9th Cir. 1999)). "Generic marks are not capable of receiving protection because they identify the product, rather than the product's source." *Id*. (quoting *KP Permanent Make-Up,* 408 F.3d at 602).

"Likelihood of confusion is a factual determination," and courts often find likelihood of confusion is best determined by the jury. *Fortune Dynamic v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1031 (9th Cir. 2010) (quoting *Thane Int'l, Inc. v. Trek Bicycle Corp*., 305 F.3d 894, 901 (9th Cir. 2002)). Courts use the eight *Sleekcraft* factors to assess likelihood of consumer confusion among similar trademarks,

assessing: "(1) the similarity of the marks; (2) the strength of the plaintiff's mark; (3) the proximity or relatedness of the goods or services; (4) the defendant's intent in selecting the mark; (5) evidence of actual confusion; (6) the marketing channels used; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers of the defendant's product." *Id.* at 1030–31 (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.3d 341 (9th Cir. 1979)). "This eight-factor analysis is 'pliant,' illustrative rather than exhaustive, and best understood as simply providing helpful guideposts" for analysis. *Id.*

The parties dispute the first and third elements of a Lanham Act claim. Olympic contends that Peninsula's trademark is entitled to no protection either because it is generic or because it is descriptive without evidence of secondary meaning. Peninsula responds that its trademark is not used generically and is either descriptive or suggestive. Olympic contends that the *Sleekcraft* factors are all neutral or weigh against a finding of likely consumer confusion. Peninsula counters that questions of fact preclude resolving likelihood of confusion on summary judgment.

## C.   Rule 56(d)

Peninsula asserts that it has not yet had the opportunity to develop the record through discovery and should be permitted to do so before the Court rules on the motion. Peninsula, through the declaration of its attorney as required by Rule 56(d), asserts that it seeks to depose Olympic and Defendants Ann Failoni and Dr. Antif Mian on topics including the geographic areas Olympic serves, its knowledge of Peninsula and its trademarks, its intent in selecting its name and logo, and "the revenue it has received in

1    connection with its trademarks so [Peninsula] can calculate the 'infringer's profits'

2    component of its damages." Dkt. 28, ⁋ 10.

3            Olympic counters that Peninsula has failed to specify what facts it expects to find

4    in discovery and why those facts are essential to opposing summary judgment. Dkt. 29 at

5    15–16. The Court concludes that Peninsula has sufficiently identified discovery it seeks,

6    discovery which could have some relevance to the secondary meaning analysis and which

7    is relevant to the likelihood of confusion analysis. The Court has not yet issued a

8    scheduling order, and the parties proposed in their Joint Status Report, Dkt. 11, that they

9    would complete discovery by January 2022. Given the very early stage of this case, in the

10   interests of judicial efficiency, the Court grants Peninsula's 56(d) request and denies

11   Olympic's motion for summary judgment without prejudice. After the depositions

12   Peninsula seeks, Olympic may either renote its motion to allow Peninsula time to respond

13   or file a new motion.

14                                  **III.  ORDER**

15           Therefore, it is hereby **ORDERED** that Peninsula's Rule 56(d) request is

16   **GRANTED** and Olympic's motion for summary judgment, Dkt. 12, is **DENIED without**

17   **prejudice**

18           Dated this 16th day of June, 2021.

19

20
                                    _____
21                                  BENJAMIN H. SETTLE
                                    United States District Judge
22